**BROWN KWON & LAM LLP**

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

Writer's Direct: clam@bkllawyers.com
(212) 295-5827

March 26, 2025

**Via ECF**
Hon. Vernon S. Broderick, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *Moore v. FQSR, LLC d/b/a KBP Foods, et al.*
      Case No. 1:24-cv-5835(VSB)

Dear Judge Broderick,

  This firm represents DARINIQUE MOORE ("Plaintiff) in the above-referenced matter. We write to respectfully request judicial approval of the parties' Fair Labor Standards Act ("FLSA") settlement agreement, attached hereto as **Exhibit A** (the "Settlement Agreement"), and subsequent dismissal of the matter with prejudice. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

  The Settlement Agreement resolves Plaintiff's retaliation claims pursuant to the FLSA and New York Labor Law ("NYLL") for the total amount of $10,263.08. Plaintiff does not otherwise have wage-and-hour claims arising under the FLSA. As part of this motion, Plaintiff's counsel requests one-third (1/3) in attorneys' fees ($3,333.33) and costs ($263.08) from the total settlement amount. Plaintiff's claims related to alleged wage-and-hour violations arising only under the NYLL and other state and local law have been addressed in a separate settlement agreement.

  Here, the parties submit that the terms of their proposed Settlement Agreement for Plaintiff's retaliation claims are fair, reasonable, and adequate. For the reasons outlined below, the Court should approve this $10,263.08 settlement as a fair, reasonable, and adequate compromise of Plaintiff's retaliation claims against Defendants.

**BACKGROUND**

  On June 28, 2024, Plaintiff filed the above-referenced matter in the Supreme Court of the State of New York, County of Bronx, Index No. 810447/2024E, alleging claims for retaliation pursuant to the Fair Labor Standards Act, as amended ("FLSA") and the New York Labor Law ("NYLL"), as well as claims for wage-and-hour violations arising only under the New York Labor Law, and other state and local law, including (1) unpaid wages due to time-shaving, (2) unpaid spread of hours, (3) unreimbursed uniform maintenance fee, (4) unpaid premiums pursuant to the

New York City Fair Workweek Law, and (5) statutory and liquidated damages pursuant to the NYLL. On or about July 31, 2024, Defendant removed the case to the United States District Court, Southern District of New York, on the basis of diversity jurisdiction. On or about August 7, 2024, pursuant to Defendant's Motion to Compel Arbitration, the parties agreed to stay all proceedings in this matter in lieu of arbitration. Since then, the parties exchanged documents and reached a settlement in principle.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

    a. Plaintiff's Range of Possible Recovery

The first factor weighs in favor of approval. Here, the settlement amount is $10,263.08. *See* **Exhibit A.** Assuming a best-case scenario, Plaintiff's damage liability analysis for her retaliation claims amount to $19,200.00, including liquidated damages and back pay arising from retaliation. Specifically, Plaintiff's damage liability analysis seeks $9,600.00 in economic damages, calculated as 20 weeks at $480 per week for backpay. Plaintiff additionally sought $9,600.00 in liquidated damages as the FLSA and NYLL permit liquidated damages on backpay for retaliation claims, with the NYLL permitting liquidated damages in an amount up to $20,000.00 for retaliation claims. *Brito v. Marina's Bakery Corp.*, 2022 U.S. Dist. LEXIS 53351, at *69 (E.D.N.Y. Mar. 24, 2022), citing NYLL § 215(2)(a). This damage liability analysis assumes that Plaintiff took 20 weeks to find her next employment and reasonably mitigated her damages during that time.

As such, the settlement amount of $10,273.08 represents a recovery of 100% of Plaintiff's owed backpay and a recovery of approximately 7% of Plaintiff's liquidated damages. This amounts to an approximate 54% recovery of Plaintiff's best-case scenario. As such, this is a significant recovery based on Plaintiff's best-case scenario.

2

      b. <u>Litigation Costs and Risks</u>

The second and third factors also favor approval as the parties are still in the early stages of litigation. If the parties were to continue litigation, the parties would need to conduct full discovery, including production of documents and depositions of all parties, including corporate representatives for Defendant. Moreover, both sides face litigation risks relating to damages and liability on the retaliation claims. For example, Defendant asserts that they acted in good faith and did not retaliate against Plaintiff, and if a factfinder agrees, Plaintiff would be precluded from recovering any liquidated damages, which would reduce her recovery. Another risk is that Plaintiff alleged that as a result of Defendant's retaliation, she suffered from a demotion, reduction in schedule, and ultimately constructive termination. While Plaintiff is confident that she would ultimately be able to establish liability for retaliation, this would require significant time and prolonged litigation as such claims rely heavily on testimony to determine whether Plaintiff was indeed retaliated against and that Defendant's defenses are meritless.

Here, where Defendant is willing to settle for 100% of Plaintiff's alleged backpay, along with a small percentage recovery of Plaintiff's liquidated damages for retaliation, Plaintiff bears a high risk that her recovery would be significantly reduced. If the parties were to continue litigation, Plaintiff would also bear the burden of demonstrating that she continually mitigated her damages after she was constructively terminated in retaliation.

For the foregoing reasons, the Parties believe that the settlement amount is fair and reasonable. Plaintiff is able to obtain a significant recovery of her alleged damages without the burden of further litigation and trial. While Defendant denies the allegations in the Complaint, as the Parties are still in the preliminary stages of litigation, without having completed formal discovery and depositions, Defendant believes that the settlement is fair and reasonable so as to avoid the anticipated burden and expense of further discovery and the fee-shifting nature of FLSA cases.

      c. <u>Arm's-Length Bargaining and Lack of Fraud or Collusion</u>

The fourth and fifth factors also weigh in favor of approval. The settlement was reached over the course of several months of negotiations and review of documents relevant to the claims of this lawsuit. Furthermore, Plaintiff's counsel has significant experience with FLSA claims. There is also clearly a lack of fraud or collusion as the settlement amount represents at least 100% of Plaintiff's alleged backpay, along with a percentage recovery of her alleged liquidated damages.

In addition to the foregoing, the Court should approve the settlement as the agreement does not contain provisions that Courts in the Second Circuit have regularly found problematic in approving settlements pursuant to the FLSA. *Cheeks*, 796 F.3d at 206; *Gurung v. White Way Threading LLC,* 226 F. Supp. 3d 226, 228 (S.D.N.Y. Dec. 8, 2016). The Settlement Agreement neither contains an overly broad release, nor a confidentiality provision. There are no clauses that would prevent Plaintiff from discussing the settlement of her retaliation claims arising under the FLSA and NYLL or from making truthful statements regarding her employment.

As the releases in the Settlement Agreement are limited to the claims in the existing lawsuit, the Court should approve the FLSA settlement. *Lazaro-Garcia v. Sengupta Food Servs.*, 2015 U.S.

Dist. LEXIS 167991, at *6 (S.D.N.Y. Dec. 15, 2015)("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action").

In order to resolve Plaintiff's non-FLSA claims, the parties have entered into a separate agreement, also dated March 24, 2025. This separate agreement contains a confidentiality provision and general release, but does not restrict or prohibit Plaintiff from discussing the facts or circumstances related to or underlying her claims made pursuant to the FLSA. *See Chowdhury v. Brioni Am., Inc.*, No. 16 Civ. 344, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreements, in which the parties submit their FLSA agreement for court review and approval but enter into a separate agreement that addresses the non-FLSA claims, which does not require judicial [review and approval] and may contain provisions that would be impermissible under *Cheeks*.") (citing *Ortiz v. Breadroll, LLC*, No. 16 Civ. 7998, 2017 U.S. Dist. LEXIS 73657, at *4-5 (S.D.N.Y. May 15, 2017); *Santos v. Yellowstone Props., Inc.*, No. 15 Civ. 3986, 2016 U.S. Dist. LEXIS 61994, at *3, n. 1 (S.D.N.Y. May 10, 2016) (approving bifurcated settlement agreements, one resolving plaintiff's FLSA claims and the other privately resolving plaintiff's discrimination claims and containing a general release).

Lastly, as will be discussed below, Plaintiff's counsel's requested attorneys' fees are not excessive as they only seek one-third of the settlement, which is typical of FLSA cases. The Parties' separate agreement for the release of Plaintiff's non-FLSA claims also provides for attorneys' fees in the amount of one-third of the settlement amount. Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiff respectfully requests that the Court find that the Agreement is a "fair and reasonable" compromise of her FLSA claims against Defendants and approve the settlement.

## **THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE**

Plaintiff further seeks approval of attorneys' fees. In accordance with Plaintiff's contingency-fee basis retainer agreement with Plaintiff's counsel, the Agreement provides that Plaintiff's counsel will recover a total sum of $3,596.41, consisting of $3,333.33 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs) and $263.08 for the cost of filing and service of process. *See* **Exhibit A**. The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiff in her retainer agreement, and a contingency fee of one-third is sufficient to account for the risks associated with representation.

Courts in this Circuit "regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp.*, No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp.*, No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs"). Therefore, Plaintiff's counsel's attorneys' fees are fair and reasonable as it similarly seeks to approve a one-third contingency-fee arrangement.

In *Cheeks* review of an FLSA settlement without a common settlement fund, Courts are increasingly declining to apply the "lodestar cross check" to determine the reasonableness of

attorneys' fees so long as the contractual contingency fee arrangement itself is reasonable. *Puerto v. Happy Life Home Health Agency Inc.*, 2023 U.S. Dist. LEXIS 212417, at *5-7 (S.D.N.Y. Nov. 29, 2023). "[C]ontractual contingency fee arrangement is to ensure recovery for an attorney *regardless of the number of hours actually expended by the attorney*." *Puerto v.*, 2023 U.S. Dist. LEXIS 212417, at *6, citing *Almanzar v. Silver Star Props. Corp.*, 2023 U.S. Dist. LEXIS 190515, at *2 (S.D.N.Y. Oct. 24, 2023). On that basis, a one-third recovery of the settlement amount is reasonable and regularly approved by Courts in this Circuit.

\*       \*       \*

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the attached Settlement Agreement and dismiss the above-referenced matter with prejudice.

We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ Clara Lam*
Clara Lam, Esq.
clam@bkllawyers.com

cc:     all parties via ECF

5